NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| PALMIRA VAZQUEZ, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civil Action No.  04-3757 (JAG) |
| JO ANNE B. BARNHART, : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| : | OPINION |
| Defendant. : | |
| : | |

**GREENAWAY, JR., U.S.D.J.**

### INTRODUCTION

Plaintiff Palmira Vazquez ("Plaintiff") seeks review of the Commissioner of Social Security's (the "Commissioner") decision denying her application for Social Security Disability Insurance Benefits ("SSDI")[1], pursuant to 42 U.S.C. § 405(g)(2000).[2]  Plaintiff asserts that the Commissioner's decision that Plaintiff was not disabled during the seven-month period from

---

[1] SSDI is a program of social insurance under which covered employees and their employers pay taxes into a special fund administered separately from the general federal revenues to purchase protection against the economic consequences of old age, disability, and death.  SSDI provides benefits to such persons who have become disabled.

[2] This section of the Social Security Act [hereinafter the "Act"] provides that any individual who was a party to a hearing before the Secretary may commence a civil action within 60 days after the Secretary's final determination.  The appropriate forum for this action is the district court of the United States judicial district in which the Plaintiff resides.  42 U.S.C. § 405(g).

April 8, 2001, the alleged onset of her disability, to November 1, 2001, is not supported by substantial evidence and should therefore be reversed or, in the alternative, remanded to the Commissioner for reconsideration.  For the reasons set forth in this opinion, this Court remands this matter to the administrative law judge for further development of the record, in accordance with this Opinion.

## PRIOR PROCEEDINGS

On August 26, 2002, Plaintiff filed an application for SSDI, alleging disability since April 8, 2001.  (Tr. 50-53.)[3]  The application was initially denied on January 2, 2003, and on reconsideration on February 24, 2003. (Tr. 26-33.)  Subsequently, Plaintiff sought a hearing before an Administrative Law Judge to review the application *de novo*.[4]  On February 4, 2004, Administrative Law Judge Richard L. De Steno  ("ALJ De Steno") issued a partially favorable decision, based upon a hearing held on December 4, 2004.  (Tr.11-13.)  Below is a summary of his findings:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date.

2. The medical evidence establishes that as of November 1, 2001, but not prior thereto, the claimant has suffered from a severe impairment involving a left-knee injury, degenerative joint disease of the left knee, and the residual effects of left-knee surgery, a herniated lumbar disc, and impaired hearing.  No mental impairment was established by the medical evidence.  Furthermore, she did not have a medically determinable severe impairment prior to November 1, 2001.

---

[3]  "Tr." refers to said transcript.  The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision.  42 U.S.C. § 405(g).

[4]  If the claimant "receives an adverse reconsideration determination, he is entitled to an evidentiary hearing and *de novo* review by an administrative law judge." Heckler v. Day, 467 U.S. 104, 106 (1984).

    3.      The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix I, Subpart P, Regulations No. 4.

    4.      The claimant's subjective complaints of symptoms and limitations as of November 1, 2001 are generally credible, but not for the period prior thereto.

    5.      Since November 1, 2001, the claimant has retained the residual functional capacity to perform work involving lifting and carrying objects weighing up to ten pounds; sitting up to six hours and standing and walking up to two hours in an eight-hour day; and a wide range of sedentary work not requiring acute hearing.

    6.      Beginning November 1, 2001, the claimant has been unable to perform the requirements of her past relevant work.

    7.      Beginning November 1, 2001, the claimant's residual functional capacity for the full range of sedentary work was slightly reduced by non-exertional limitations.

    8.      On the claimant's established onset date of November 1, 2001, the claimant was forty-nine years old. On September 14, 2002, the claimant attained age 50.

    9.      The claimant has a high school education, but is not literate in English.

    10.     The claimant has an unskilled work background.

    11.     Considering the claimant's limitations, she has been unable to make an adjustment to any work that exists in significant numbers in the national economy since November 1, 2001; a finding of "disabled" is reached as of November 1, 2001.

    12.     The claimant has been under a disability, as defined in the Social Security Act, since November 1, 2001, but not prior thereto (20 C.F.R. § 404.1520 (f)).

(Tr. 19.) Based on these findings, ALJ De Steno concluded that Plaintiff was entitled to Disability Insurance Benefits under Sections 21(i) and 223, respectively, of the Social Security Act, beginning November 1, 2001, but not thereto. (Tr. 20.) On June 3, 2004, the Social Security Administration Appeals Council affirmed ALJ De Steno's decision issued on February 4, 2004. (Tr. 4-6.) Plaintiff subsequently filed this action, seeking review of the Commissioner's

final decision, pursuant to 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff Palmira Vazquez is 53 years old and has a third grade education.[5] She does not speak or read English. (Tr. 15, 177.) Plaintiff's past relevant work experience includes working on assembly lines and as a machine operator. (Tr. 15, 67.) Plaintiff's most recent job entailed packaging computer and telephone parts. (Tr. 15, 67.) The position required Plaintiff to stand the entire work shift and to lift up to 10 pounds frequently. (Tr. 67, 178.) Plaintiff alleges a disability onset date of April 8, 2001, due to depressive neurosis[6], deafness in her left ear, disc disease of the lumbar[7] spine, severe lower back pain, and pain in her left knee. (Tr. 14.)

### B. Medical Evidence

The record indicates that Plaintiff received medical attention on several occasions.

1. Examination by Dr. Ricardo M. Rodriguez

Dr. Ricardo Rodriguez saw Plaintiff for the first time on October 23, 2001. (Tr. 116.) On August 12, 2002, Dr. Rodriguez reported that Plaintiff suffered from severe left knee pain, left

---

[5] Plaintiff's disability report, dated August 28, 2002, indicated she had completed high school. (Tr. 72.) During the hearing before ALJ De Steno, however, Plaintiff testified that she completed the third grade. (Tr. 177.)

[6] Neurosis is "[a] former name for a category of mental disorders in which the symptoms are distressing to the person, reality testing is intact, behavior does not violate gross social norms, and there is no apparent organic cause." Mosby's Medical, Nursing & Allied Health Dictionary, 1178 (6th ed. 2002) (hereinafter "Mosby's").

[7] Lumbar refers to "the part of the body between thorax and the pelvis." Mosby's at 1025.

hand paresthesia[8], asthenia[9], headaches and polyarthralgia.[10] (Tr. 116.) Neurological findings were normal and the extremities examination revealed no edema[11] and normal pulses. (Tr. 116.) A magnetic resonance imaging (MRI) test of Plaintiff's left knee was taken on November 3, 2001 and revealed a lateral meniscal tear and mild lateral compartment. (Tr. 121.) A bone density test on November 3, 2001, reveled osteopenia[12] of the lumbar spine. (Tr. 120.) The MRI also revealed no bone loss of Plaintiff's left hip, and the data predicted Plaintiff had a moderate fracture. Id. Dr. Rodriguez recommended that Plaintiff consult with an orthopedist. (Tr. 147.)

2. Examination by Dr. John A. Kline

At the request of Dr. Rodriguez, Plaintiff began seeing orthopedist, Dr. John A. Kline on February 14, 2002. (Tr. 147.) Plaintiff complained of suffering from back pain periodically over the last several years, however over the previous three months the pain has worsened progressively. (Tr. 150.) Dr. Kline suggested arthroscopic surgery on Plaintiff's left knee, in order to carry out a lateral meniscectomy. (Tr. 150.) He noted that Plaintiff had no significant medical history and that the only prescription medication she took was Celebrex. (Tr. 150.)

On July 30, 2002, Dr. Kline performed a meniscectomy of Plaintiff's left knee. (Tr. 149.) When Plaintiff returned to Dr. Kline on August 6, 2002, Dr. Kline observed that she walked with

---

[8] Paresthesia is "[a] subjective sensation, experienced as numbness, tingling, or 'pins and needles' feeling." Mosby's at 1285.

[9] Asthenia refers to "the lack of loss of strength or energy." Id. at 146.

[10] Polyarthralgia is an inflamation that involves several joints. Id. at 1367.

[11] Edema is "the abnormal accumulation of fluid in interstitial spaces of tissues." Id. at 571.

[12] Osteopenia is a decrease in bone mass. Id. at 1245.

5

a "stiff gait," and that she has a mild to moderate amount of arthritis. (Tr. 149.) Plaintiff claimed that her legs gave out on her; she fell, bruised her hip and began using crutches. (Tr. 149.) Dr. Kline recommended physical therapy and a prescription for a straight cane to help Plaintiff maintain her balance. (Tr. 149.)

On September 24, 2002, three months after the arthroscopic surgery, Dr. Kline noted that Plaintiff's recovery after surgery was progressing "much . . . slower than [he] would have thought." (Tr. 166.) He recommended continued physical therapy and suggested taking an additional MRI of Plaintiff's left knee. (Tr. 166.)

The second MRI, taken on October 21, 2002, revealed a completely abnormal lateral meniscus, severe atrophy, abnormal anterior cruciate ligament, and tricompartmental osteoarthritis. (Tr. 169.)

On November 26, 2002, Dr. Kline noted that the MRI did not show any loose fragments, only changes in the results of the lateral meniscectomy and arthritic changes. (Tr. 148.) He recommended Synvisc injections[13] and continued physical therapy. (Tr. 148, 166.)

3. Examination by Dr. Alvaro M. Gutierrez

On October 2, 2002, Dr. Alvaro Gutierrez from the Department of Labor Office of Medical Evaluation conducted a psychiatric evaluation of Plaintiff. (Tr. 134-36.) The Plaintiff's chief complaint was severe back pain. (Tr. 134, 136.) Plaintiff denied any previous psychiatric treatment. (Tr. 135.) Plaintiff was oriented to person, place, and time, and she was coherent. (Tr. 136.) Dr. Gutierrez found that Plaintiff's mood was moderately depressed and anxious.

---

[13] Synvisc is a trademark for preparation of hyaluronate sodium derivative. Dorland's Illustrative Medical Dictionary, 1839 (30th ed. 2003)

(Tr. 136.) She showed an ability to follow a conversation, directions, and complete simple math problems. (Tr. 136.)

    4. Examination by Dr. Diego Saporta

Dr. Diego Saporta examined Plaintiff on May 16, 2002 and again on June 13, 2002. Plaintiff complained of progressive hearing problems. (Tr. 105-109.) Dr. Saporta diagnosed Plaintiff with hearing loss and chronic otitis media[14] with perforation of the tympanic membrane.[15] (Tr. 105.) Dr. Saporta referred Plaintiff for a hearing aid evaluation. (Tr. 107.)

    5. Examination by Dr. Steven Meyerson

Dr. Steven Meyerson performed an MRI on Plaintiff on July 12, 2002. Upon review of the MRI, Dr. Meyerson reported "[a]t the L5-S1, there is a decrease in disc signal and disc height." (Tr. 114.) The report concluded "[t]here is a posterocentral disc protrusion mildly indenting the thecal sac at L5-S1." (Tr. 114.)

    6. Evaluation by Dr. Rashel Potashnik

Dr. Potashnik of the Department of Labor's Office of Medical Evaluation, evaluated Plaintiff's records on December 9, 2002. (Tr. 152-54.) Dr. Potashnik noted that Plaintiff's "walking tolerance is one block . . . [and] her sitting tolerance is half-an-hour." (Tr. 153.) He reported that the Plaintiff "couldn't comply with strength testing due to pain in her left knee." (Tr. 154.) Dr. Potashnik's report concluded that Plaintiff "presented with discogenic lumbar pain, left antalgic limp, decreased knee flexion and mild weakness of left quadriceps." (Tr. 154.)

---

[14] Otitis media is an "inflammation or infection of the middle ear." Id. at 1249.

[15] Tympanic membrane is "a thin semitransparent membrane in the middle of the ear that transmits sound vibrations to the internal ear by means of the auditory ossicles." Id. at 1766.

**C. Plaintiff's Testimony at December 4, 2003, ALJ Hearing**

At the hearing before ALJ De Steno, Plaintiff testified that she was 51 years of age, has a third grade education, and cannot read nor write in English. (Tr. 177-78.) Plaintiff testified that she stopped working voluntarily on April 8, 2001, because the pain in her left knee became unbearable. (Tr. 179.) Plaintiff testified that after surgery in July 2002, and physical therapy, the pain in her left knee worsened. (Tr. 179.) Plaintiff noted that she could not stand or walk for too long because her legs give away and she loses her balance. (Tr. 180-81.)

Plaintiff testified that she cannot stand or sit for more then 20 minutes before she experiences problems in her lower back and knee and is forced to reposition herself. (Tr. 182.) Plaintiff also testified that she often feels upset about her condition and cries or feels depressed. (Tr. 184.) Plaintiff alleges that her disabilities limit her from taking part in household chores and driving. (Tr. 186.)

## DISCUSSION

**A. Standard of Review**

This Court's review of the Commissioner's final decision is limited to a determination of whether ALJ De Steno applied the proper legal standards in making his findings of fact, and whether these findings are supported by substantial evidence in the record as a whole. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). If the Commissioner's decision is "supported by substantial evidence," the District Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence is defined as "more than a

mere scintilla" of evidence, but may be "less than a preponderance of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (citation omitted). In reviewing the totality of the evidence, this Court may not re-weigh the evidence in the record, Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998), or "substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citation omitted), cert. denied, Williams v. Shalala, 507 U.S. 924 (1993)(citation omitted). Therefore, when substantial evidence supports the ALJ's finding, the reviewing court must affirm the ALJ's holding, even if the evidence presented may also support a different conclusion. LaCorte v. Bowen, 678 F. Supp. 80, 84 (D.N.J. 1988).

**B.  Statutory Standards**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5) (2000). To qualify for SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381 (2000). A claimant is deemed "disabled" under the Act, if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D.Del. 2002). Finally, while subjective complaints of pain are considered, they are not enough to establish disability.

9

42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C. The Five Step Evaluation Process and the Burden of Proof

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520 (2003). At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[16] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step-two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c)). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step-three of the process.

At step-three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Regulations No. 4; 20 C.F.R. § 404.1520(d). If the claimant's impairment(s) meets or equals one of the listed impairments he will be found disabled under the Social Security

---

[16] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 (2003).

Act. If the claimant does not suffer from a listed impairment(s) or its equivalent, the analysis proceeds to steps-four and five. Step-four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is unable to resume his past work, and his condition is deemed "severe" yet not listed, the evaluation moves to the final step. At the final step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1) (2003). If the ALJ finds a significant number of jobs that claimant can perform, claimant will be found not disabled. Id.

**D. ALJ De Steno's Findings**

ALJ De Steno performed the five-step evaluation and concluded that Plaintiff was not disabled prior to November 1, 2001, as defined in 20 C.F.R. § 404.1520. (Tr. 16.) ALJ De Steno first found that Plaintiff did not engage in substantial gainful activity since April 2001, the alleged onset date of disability. (Tr. 16.)

At steps two and three of the inquiry, ALJ De Steno found the evidence supports the existence of a severe impairment, as of November 1, 2001, but not prior to that date. ALJ De Steno determined that November 1, 2001, was the onset date based on the fact that "the earliest significant medical evidence is from November of 2001." (Tr. 16.) ALJ De Steno concludes "[t]he claimant's subjective complaints of disabling symptoms for the period prior to November 1, 2001, are not supported by the record or credited." (Tr. 16.) ALJ De Steno found that Plaintiff's impairments prior to November 1, 2001 did not meet or equal in severity any

11

impairment listed on Appendix I of 20 C.F.R. § 404.1520(d).  (Tr. 19.)

At the fourth-step, ALJ De Steno found that because Plaintiff's disabilities precluded her from working in a job which requires lifting or carrying more then ten pounds and walking for more then two hours, she could not meet the expectations of her past relevant work as a packer and machine operator in the period after the onset date of her disabilities, November 1, 2001. (Tr. 18.)

Since the Plaintiff has demonstrated that she lacked the residual functional capacity to perform requirements of her past relevant work since November 1, 2001, ALJ De Steno found in the period after November 1, 2001, no jobs existed in significant numbers in the national economy that Plaintiff has the capacity to perform.  (Tr. 18.) ALJ De Steno concluded that Plaintiff has been disabled, within the meaning of the Social Security Act, since November 1, 2001.  (Tr. 18.)

**E. Analysis**

Plaintiff argues that ALJ De Steno's determination that November 1, 2001 is the onset date of Plaintiff's disability, is not supported by substantial evidence.  In finding that Plaintiff was not disabled prior to November 1, 2001, Plaintiff claims ALJ De Steno erred by prematurely terminating his evaluation of Plaintiff's onset date at step-two of the analysis.  Plaintiff argues that the analysis at step-two is a de minimis threshold, evaluating the severity of Plaintiff's alleged impairment.  Plaintiff further argues her condition satisfies the standard for evaluating severity at step two and that ALJ De Steno's analysis was, therefore incomplete.  Plaintiff also contends that ALJ De Steno violated Social Security Ruling ("SSR") 83-29 by not consulting a medical expert to determine the onset date of her disability.

This Court finds that ALJ De Steno's determination was not supported by substantial evidence. This case is remanded with instructions for further development of the record as to provide medical testimony sufficient to permit effective evaluation of Plaintiff's claims of disability as of the alleged onset date of April 8, 2001 and thus, to satisfy the requirement that the ALJ's decision be based on substantial evidence.

**1. Evaluation at Step Two.**

Plaintiff claims an onset date of disability of April 8, 2001. Plaintiff alleges ALJ De Steno erred in evaluating her claimed disability onset date by prematurely ceasing his evaluation at step-two of the five step analysis. Plaintiff further alleges that ALJ De Steno's determination of an onset date of November 1, 2001, erroneously discredits her subjective complaints of disability during the period from April 8, 2001 through November 1, 2001 and misapplies the standard for evaluating an alleged severe impairment at step-two of the evaluation.

At step-two of the evaluation process, the claimant has the burden to show that she has a medically determinable impairment or combination of impairments which are "severe." Bowen, 482 U.S. at 146 n.5. The Social Security Administration defines "severe" at the second step in terms of what is "not severe." Newell v. Comm'r Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Accordingly, "[a]n impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical ability or mental ability to do basic work activities." 20 C.F.R. § 220.102(a). Basic work activities include "walking, standing, sitting, lifting, pushing, carrying, or handling." 20 C.F.R. § 220.102(b)(1).

The burden on an applicant to show the severity of an impairment at step-two is not an exacting one. McCrea v. Comm'r Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The Third

Circuit has stated that "[a]n applicant need only to demonstrate something beyond 'a slight abnormality or combination of slight abnormalities which would have more than a minimal effect on an individual's ability to work.'" Id. (quoting Social Security Ruling ("SSR")[17] 85-28, 1985 WL 56856, at *3). If the claimant presents evidence that the impairment is more than a "slight abnormality," the burden at step-two to demonstrate severity is satisfied and the analysis should proceed. Newell, 347 F.3d at 546-47. All reasonable doubt inferences with respect to severity should be resolved in favor of the applicant. Id. at 547.

ALJ De Steno's analysis of the period prior to November 1, 2001 ended at step-two after he concluded that Plaintiff's "subjective complaints of disabling symptoms for the period prior to November 1, 2001, [were] not supported by the record or credited." (Tr. 16.) ALJ De Steno based his determination on the fact that "the earliest significant medical evidence [in the record] is from November of 2001." (Tr. 16.)

### 2. ALJ De Steno Erred In Evaluating The Severity of Plaintiff's Degenerative Impairment at Step Two.

This Court finds that ALJ De Steno erred in concluding that Plaintiff's subjective complaints of pain during the period April 8, 2001 through November 1, 2001 were unsupported and not credible. In light of the degenerative nature of the claimed ailment and Plaintiff's subjective complaints of pain prior to the November 1, 2001 onset date found by ALJ De Steno, this Court finds the record insufficient to determine Plaintiff's onset date and therefore, remands this matter for further development of the record.

---

[17] Social Security Rulings constitute the Social Security Administration's interpretation of the statutes it administers and its own regulations. The Rulings do not have the force of the law but are binding on all components of the SSA. Newell, 347 F.3d at 546 n.4 (citations omitted).

The step-two inquiry is a de minimis standard, intended to distinguish unmerited claims. Newell, 347 F.3d at 546. The second step of the five-step analysis is rarely used as the basis for the denial of benefits, a reviewing Court examines denials on the basis that claimant failed to satisfy step-two with close scrutiny. McCrea, 370 F.3d at 360-61. All cases where benefits were denied at the second-step should "raise a judicial eyebrow." Id.

Pursuant to the statute, the onset date of a claimant's disability is the first day which the claimant can be considered disabled for social security purposes. SSR 83-20. See also 42 U.S.C.§ 405 (g). Determination of an onset date is governed by 20 C.F.R.§ 404.321(a), the onset date occurs when the following factors coincide: the absence of substantial gainful activity, the existence of a medically determinable impairment of disabling severity, and the expectation that the impairment is going to be at least 12 months in duration or result in death. Id. Any reasonable doubt regarding the severity of Plaintiff's impairment should have been resolved in favor of Plaintiff. SSR 85-28, Newell, 347 F.3d at 546-47.

Plaintiff alleges that she stopped working voluntarily in April of 2001, because the pain in her left knee became unbearable. (Tr. 179.) Plaintiff contends that her ability to perform basic work activities was significantly limited by the pain in her left knee and back. (Tr. 179.) On August 12, 2002, Dr. Rodriguez noted that Plaintiff told him that her back pain may have prohibited her from working for two years. (Tr. 115.) Dr. Potashnik of the Department of Labor's Office of Medical Evaluation noted that Plaintiff's "walking tolerance is one block . . . [and] her sitting tolerance is half-an-hour." (Tr. 153.) Dr. Saporta diagnosed Plaintiff with hearing loss and chronic otits media. (Tr. 107.) After two MRI's of Plaintiff's left knee and arthroscopic surgery, Dr. Kline concluded "[t]he left knee continues to give her a lot of pain . . .

therapy . . . didn't help at all . . . Synvisc is her only best bet, but I guess she is not going to be able to get that." (Tr. 165.)

An ALJ may not dismiss a plaintiff's claim of an aliment--supported by medical evidence--as "not credible" without providing substantial analysis or pointing to contradicting medical evidence. Williams, 970 F.2d at 1185; Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). In light of the medical evidence to the contrary and the brevity of ALJ De Steno's analysis, this Court finds ALJ De Steno's dismissal of Plaintiff's subjective complaints of pain during the period April 8, 2001 through November 1, 2001 is unsupported. ALJ De Steno states no basis for his finding. An ALJ must state the basis for concluding that a claimant's testimony is not credible. Cotter, 642 F.2d 700. ALJ De Steno incorrectly limits Plaintiff's evaluation of the alleged onset date to the period during which she sought treatment for her aliment.

In support of a November 1, 2001, onset date, ALJ De Steno disregards Dr. Rodriguez opinion as "speculative." (Tr. 18.) While Dr. Rodriguez' opinion is retrospective, an opinion by a medical professional as to the probability of deterioration of a claimant's condition may not be dismissed as speculative merely because it relates to a period before the instant moment. See Fargnoli v. Halter, 247 F.3d 34 (3d Cir. 2001) (a treating physician's opinion cannot be rejected unless the ALJ points to other medical evidence of record).

Given the degenerative nature of Plaintiff's injury--lumbar discs and arthritic knees--Plaintiff may have suffered the pain she complained of well before her visit with Dr. Kline. The fact that 1) Plaintiff stopped working as of her alleged onset date, April 8, 2001, 2) the degenerative nature of Plaintiff's aliment, and 3) Plaintiff's subjective complaints that she suffered from severe physical restrictions due to pain in her back and knees prior to her visit with

Dr. Kline, this Court remands this matter to the ALJ for further development of the record. See Kent v. Schweiker, 710 F.2d 110 (3d Cir. 1983) (remanded where ALJ rejected unrebutted medical evidence of severity of claimant's back injury because she neither sought an operation nor visited doctors frequently).

The ALJ may seek the assistance of a medical advisor and obtain the evidence necessary to determine with greater exactitude the onset date of Plaintiff's ailment. SSR 83-20, SSR 96-7P. See also Walton v. Halter, 243 F.3d 703 (3d Cir. 2001) (ruling the ALJ had no legitimate medical basis for rejecting alleged onset date.) An ALJ must call upon the services of a medical advisor in a situation where the alleged impairment is a slowly progressing one and adequate medical records for the most relevant period are not available. Newell, 347 F.3d at 546-57.

## CONCLUSION

For the foregoing reasons, this Court finds that ALJ De Steno violated SSR 83-29 by not consulting a medical expert to determine the onset date of Plaintiff's disability. As a result, this matter is REMANDED for further development of the record regarding the onset date of Plaintiff's disability. Specifically, medical testimony sufficient to evaluate Plaintiff's allegation of a disability onset date of April 8, 2001.

     S/Joseph A. Greenaway, Jr.
     JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: August 4, 2005